Morning ladies and gentlemen. We'll hear the case of United States v. Falcon. Counsel. May it please the court. Counsel. My name is Hank Branham. I'm an assistant federal defender from Great Falls, Montana, and I've represented Mr. Falcon through the course of the proceedings. I'd like to reserve two minutes for rebuttal, if I may. This is the third time that Mr. Falcon has been sentenced to 110 months in prison. The statutory maximum of the offense of conviction, which is a felon in possession, is 120 months. This is the third appeal, and I appreciate the opportunity to argue the case before the court. In the court's previous decision, this court stated that it seems likely that Mr. Falcon's base offense level should be 14, and the panel went on to say that it can't conclude that a 110-month sentence was either procedurally or substantively reasonable, and it was remanded. So this Court has never reached the issue of the substantive reasonableness of the 110-month sentence imposed on a man with 96 months to live. Now, the court directed us to do that. I don't know that we reach the substantiveness if there's some procedural error. And so I guess my question to you is, do you challenge the base offense level that the district court imposed? Yes. Okay. For what reason? Well, I think under DeCamps, the modified categorical approach should not have been used. Now, granted DeCamps was decided after the last sentencing of Mr. Falcon. Did you argue anything? I know DeCamps was not decided then, but did you argue any of that before the district court? I argued that this court had said that the 14 seems likely, and that's what the district court ought to impose. And did you give any reason why? No, I did not. And why was that? I couldn't think of any. Okay. I'll be candid. It wasn't in the memorandum disposition. No, that's correct. And it didn't say why, but on my – I saw my role as Mr. Falcon's advocate, if the court said it should be 14, I'm sure in the heck not going to start any higher, quite frankly. Because it looks like there was a lot of confusion when the case was sent back in that memorandum, from that memorandum disposition. I would definitely agree with that characterization, Your Honor. And it looks like everybody kind of looked at that, but just you argued it's 14 because the Ninth Circuit said it's 14. The district court seemed a little befuddled as to why it was 14. And then it turned out someone figured out that it might be because of the crime of violence, you know, predicate. And so he made some analysis, but it wasn't the correct analysis. Would you agree with that? Yes. Okay. And so now you want to argue before this Court what the correct analysis should have been. Yes, Your Honor. All right. Tell me what you think. Okay. I think DeCamp says – I've got to hear mine up. The issue in DeCamp was whether sentencing courts may consult additional documents when a defendant is convicted under an indivisible statute, one that doesn't have the elements in the alternative and that criminalizes broader conduct than the generic offense. And I think that's what happened here in that. Yes, Your Honor. So then the first question is whether this prior conviction under consideration is or is not divisible. Isn't that the first question? Yes. Under DeCamp? Yes, Your Honor. And your position is what? Is that it isn't and the reason is that it isn't. Is it is or isn't? It is not divisible. Because? Because it has to be a violation of a court order. That's the first under the Washington statute. And I think the language in DeCamp, the Court indicates that it may not – that only divisible statutes enable a sentencing court to consider that a jury or a judge convicted the defendant of every element. And there may actually be cases where they did – the defendant did hit, commit all the elements of the generic statute, but since there was something more, the categorical – the modified categorical approach shouldn't be resorted to. And the district court here never said modified categorical approach, categorical approach, but I think the record is clear that the modified categorical approach was employed. The district court ordered the government to produce reams of documents, quite frankly, about the underlying conviction and the plea, which showed that apparently Mr. Falcon was under an order of protection and assaulted someone, or the subject of that order. But I think for the first time, it's not divisible. Why? Because it has to be a violation of the protection order. And then, you know, that's the first thing. And the Washington statute, that's the – not that the title necessarily controls, but the title is a violation of order. So it first has to be a violation of the protection order. Then you go to the assault. Subsection 4 of Washington 26.5.110, any assault that is a violation of an order. But don't we have two ways to look at it? One is any assault, I mean, the statute that we're talking about, any assault that violates a protective order that does not amount to assault in the first or second degree. And then any conduct that violates a protective order that is reckless and creates a substantial risk of death or serious physical injury to another person. It seems like it's divisible in that way. Well, but I think to get there, I would argue that it isn't, because the assault has to be a violation of an order, but not a serious one, or perhaps something that's not then an assault. So I think the dilemma then, when we turn to the guideline and what's the base offense level, is, is it a crime of violence? I mean, that's the crux here is, if Mr. Falcon has a prior crime of violence, we start at a 20. I know when I'm not – that's clearly the framework. So on his behalf, his Honor. Let me ask you about Valenzuela. Does Valenzuela apply here? Well, I think it does to the extent – I think the Blackburg analysis is still helpful. So, yes, I think as far as that's concerned, to analyze the underlying statute, I think you can still use the Valenzuela analysis, which adopts the Blackburger test. Well, I guess what I'm focused on is another – when the judge made the calculation of adding four levels, because – which had been in dispute before. I understand the history of this case before. There was a four-level upward adjustment. Previously, however, it looks like the district court had misread the section and applied the burglary upward adjustment and drug offense one. It was sent back by the prior panel, but then upon further review and amended pre-sentence report, the court determined that there was a basis for the upward – four-level upward enhancement, because the defendant here had the stolen – he had sold the stolen gun to someone else, and that constituted another offense. Is that correct? That is correct, and, Your Honor, then – So then, therefore, under application note, I think it's 4 of 2K2.1b6b, the four-level enhancement would apply. I think that's accurate, and I think that's a – What do you mean you think it's accurate? You're saying that it was – I'm saying I agree. Okay. You're saying you agree the four-level enhancement applies? I think under Valenzuela it does. I wish I could come up with a way that it doesn't. He – the first argument was – No, you should have stopped at your two minutes. Yes, I am. I'm well into it, Your Honor. Yes. If there's nothing else right now, I'd like to save my minute. Or would you like me to – I'm not sure it's a good idea either way, but, you know, why don't you just sit down? That would be good. Thank you, Your Honor. Okay. Good morning. Paulette Stewart with the United States Attorney's Office in the District of Montana. I am stationed in the Helena office, and I've had this case since, I guess, it came back from appeal the first time around regarding Mr. Falcon's question. In regard to your question or your comment about the crime of violence, it's been always the same conviction from Washington that's always been found to be or determined to be a crime of violence. And then when it came back last time, there was quite a bit of confusion because all we had was the memorandum saying that it was likely a base offense level 14, and that's all we had to go on. So it was – and the district courts, and obviously Mr. Branham and I, had a conversation about what the memorandum meant, and that had the memorandum said the base offense level was 14, would have been a very quick conversation. That's where the district court would have started. Instead, the district court asked for the court documentation, which we at least had some of, but he basically wanted the entire record on three different assaults. Two weren't at issue. Two were misdemeanors. And then we had this third one that the court, again, decided was a crime of violence. And then basically in this time around, on appeal, basically defense complains or falcon complains, that counsel complains that the district court didn't follow the mandate. You know, in the statement of issues, counsel says, you know, did the district court err in finding the base offense level of 20, but really what the complaint was is that the district court didn't follow the mandate, that it was likely 14. Well, yes, but we're beyond that now. I mean, the question now is, is a base offense level 20 supportable or justified based on the prior crime of violence that is the basis for the base level of 20 instead of 14? So let's talk about that. It's a little confusing because it seems like the government recognized that issue after the last, when it went back. In fact, I think it referenced it in the petition for rehearing or something like that. But then on appeal here, it seemed confused again as to why we were doing this. You know, I guess, I don't know that there was confusion. I think the government's position has always been that it was correct at a base offense level of 20. Because? Because it was a crime of violence. Tell me why. Because there was physical force used in the commission of the offense. But that's no longer the case. I know. Okay. So do you agree that that's no longer the case? And I don't know even if it was the case then under the Taylor analysis, but let's look under DeCamps because that's what matters right now. So what's your position under DeCamps? Under DeCamps, it is our position that the statute is divisible. So then you do get to look at the elements of that violent. Well, first of all, before divisible, the statute's overbrought, right? You know, it's not categorically a crime of violence, is it? No, it is not categorically a crime of violence, Your Honor. And then so the next question is, is it divisible? Yes, Your Honor. And your answer to that is? Yes, it is divisible. How is that? What are the, I'll say like, what makes it divisible? Like alternative elements? Well, it's alternative elements, and then in the statute itself, which is RCW 26.50.110, that basically you go through, it is, it's in order, and then you've got restrained and violations, except as provisions in sub 4 and 5, and then you've got this list of the five subparts as well, and so it's, there are a number of ways in which you can violate the orders or the court orders, and so that is why it makes the statute divisible. You mean the chapters listed, 792, 790, 9A46, those are the divisible sections? Well, we've got the one through, yes. And then in this, then we've also then got basically, then I guess, yes, that's divisible, because there are a number of ways to violate this statute. And so then the court gets to look at the documents to see which portion of this divisible statute the defendant violated. And what do you conclude based on that, and why? And then basically in this, it was sub 4 that the defendant in this case violated, and basically you've got to have a violation that includes an assault, but not in the first or second degree. And then basically, then we also then look at the elements. But don't the documents show it was not an assault in the first or second degree? Yes. All right. If you agree to that, then it seems like it's a fourth degree assault. Would you agree with that? Yes. Well, if it's a fourth degree assault, then it's not a crime of violence under because it's a, it's a, within that section, it's capable of not having physical, bodily harm or the attempted use or threatened use of force against the person of another. Yes. And this Court has already found that that was not categorically nor under the modified categorical approach, not a crime of violence. But part of our argument is, in this case, is that because it wasn't raised in prior briefs or previously complained of, what we have is a plain error review. And so what the defendant needs to show is that there is a reasonable probability that but for this error, that his sentence would have been different. Even if Dukamp's was not decided then? Yes. Because he doesn't, what he complains of is that the district court didn't follow this Court's mandate. He doesn't complain that the district court actually erred in its calculation in getting to the crime of violence. But does it matter that neither he or you or the judge apparently knew why the mandate or what the court of appeals was basing its decision on? You don't think that matters at all? Maybe one thing, if just the defendant didn't, but you didn't either. No, none of us did. All right. So, but yet, the defendant should be faulted for that. Well, no. But at the same turn, in coming up with this present appeal, there was no complaint about, well, geez, you know, the judge followed the wrong process, this was a statute that, there was none of that. It's just purely that the court just didn't listen to the, to this Court's instruction, saying it is likely a 14, where basically what the district court did was then go through and say, well, here's why it is not likely a 14. And so that's what your argument is, yes, it's not a crime of violence, but under plain error review, it doesn't matter. Correct. And is that what you said in the brief? No, Your Honor, because I, because we didn't. So you didn't argue that to us either. No, Your Honor. So that seems ironic, but that's what your argument is now. Because really this is a, this has been rather a mess, trying to sort through what occurred here procedurally and then substantively, trying to figure out the arguments of both of the parties. Thanks for doing all of that. But that leaves the fore point about whether the other one was an offense using a firearm, the prior offense, and that's another one that's probably, I don't know which category of judge would use descriptions. Well, I'm curious about that. That one never came up. I don't know that you or anybody highlighted that. It looks like just upon review, there's a question of whether or not there might have been a procedural problem or error with the district court applying the four-level enhancement. I guess what's your position regarding Valenzuela? Is that still applicable or good in light of the change that's been made to the guidelines and Application Note 14? You know, I think Valenzuela is still applicable. Let me find Application Note 14. Because it did, I do believe it is still applicable. I do think that it was correctly applied. I also believe that the Court had an alternative basis that wasn't, frankly, in the PSR and wasn't briefed by anybody because it wasn't brought up, that the PSR writer also could have used Montana's felony theft statute because of Mr. Falcon's possession of stolen property, not just stolen firearms, that basically he kept the truck without authorization or without permission of the owner, the truck itself, and then the firearms and tools and all those items within. You know, if this weren't the third time this case, we had had to consider the sentencing in this case, I'd say the best solution would be to throw everything out, go start again, except I'm afraid of what would happen the fourth time. I must say, now your argument is that here's something that nobody ever considered, an argument nobody ever made, that it was on a different basis that that could have been considered. I don't know what you do after the third appeal when nobody seems to get anything right on either side or the Court. Okay. Let me just ask you. I just want to make sure. You think Valenzuela is still good law? I do, Your Honor. All right. Thank you. Okay. Thank you very much. And you really want another minute? Yes, Your Honor. Oh, good. And I want to get to the substance. Mr. Falcon is a criminal Category 6, but it's kind of like death by a thousand small cuts. He really hasn't done anything until this crime, more than 30 days. The government has never disputed his HIV status and his estimate of his life expectancy, and he keeps getting sentenced to a term of imprisonment that exceeds that life expectancy, and I submit that that's not a substantively reasonable sentence. Thank you very much, Your Honor. Thank you. The case just argued will be submitted. The Court will stand in recess to the day.
judges: Reinhardt, Tashima, Murguia